STATE *EX REL.* FRANKLIN v. RABORN.

1. PROHIBITION is proper only where inferior tribunal acts without
   jurisdiction, or in excess of its power, and will not lie to correct
   errors of law or fact.
2. COUNTY COMMISSIONERS—PUBLIC ROADS.—Under the recent county
   government acts, county commissioners have power to alter or
   change old public road, and such action may be had at an extra
   meeting without notice to the public generally, and with notice to
   those alone whose lands are desired for location of changed road.
3. IBID.—IBID.—Acts of 1883, Rev. Stat., 1171, *et seq.,* requiring posted
   notices, &c., does not apply to a change or alteration in an existing
   road not amounting to a relocation.
4. IBID.—IBID.—PROHIBITION.—Whether commissioners in altering road
   were influenced by private interests of a firm and disregarded inter-
   ests of the public, not decided, because not necessary in application
   for writ of prohibition.

   Before ALDRICH, J., Aiken, August, 1900.   Affirmed.

   Petition by W. H. Franklin against T. P. Raborn, J. C.
Courtney and A. J. McElmurray, as county commissioners
for Aiken County, and Richard McNamee & Co., for writ in
prohibiton.   The following is the Circuit decree:

   "On June 9th,· 1900, upon the verified petition of W. H.
Franklin, jr., a freeholder and taxpayer of the county of

Aiken, and the relator herein, and certain affidavits, I made an order requiring the county commissioners of Aiken County and Richard McNamee & Co., the respondents, as stated in the caption herein, to show cause before me at my chambers, at Aiken, S. C., on June 16th, 1900, why a writ of prohibition should not issue to restrain the said board of county commissioners, and the said Richard McNamee & Co., their agents, servants and employees, from changing and altering the long established route of the public highway, in said county, known as the Pine Log Road, at or near Kaolin, in said county, from discontinuing the use of said public highway at the point above mentioned as proposed; from mining the said highway at said point for kaolin, or from suffering or permitting the same to be done; from digging up, obstructing, abandoning and destroying the said public highway at said point, and from doing any act or thing whereby the free and unobstructed use and travel of the public, over and along said public highway, as it now stands, at said point, may be hindered, interrupted or prevented, and why the relator should not have such other and further relief as to the Court may seem just. The order contained a provision that the respondents until the further order of the Court, be enjoined and restrained from permitting or committing any of the acts above stated, and that the relator should execute the usual injunction bond.

"On June 16th, 1900, the respondents made their return to the rule herein. The relator desired to submit affidavits in reply to said return, which was allowed, and respondents also asked for further time in which to submit additional affidavits. As I was then on the eve of holding the Courts of the 7th Circuit, I signed an order, agreed to by counsel, which, *inter alia,* directed that 'The questions herein be continued, to be heard before me at my chambers in Spartanburg, S. C., on the 12th July, 1900, at 8 o'clock p. m., or as soon thereafter as counsel can be heard.'

"On July 12th, 1900, at Spartanburg, S. C., all of the papers were read and submitted, and the issues ably and

elaborately argued. Owing to the press of business, having to hold Court daily, I have not heretofore had the time to consider the issues herein with that care and consideration I desired to give to them.

"The pleadings herein are quite long, and a great number of affidavits have been submitted. I shall set out so much of the pleadings, exhibits, etc., as I deem necessary, and refer to others. This proceeding may be divided into two parts, viz: matters of record, and matters not of record. The record begins with the following petition, the caption omitted:

" 'To the honorable board of county commissioners in and for the county aforesaid: The humble petition of Richard McNamee and James Gresham Gardner, copartners as R. McNamee & Co., respectfully shows to your honorable board: That they are the owners in fee simple and in possession of a large body of land in the county aforesaid, on both sides of the Pine Log Road, one of the highways of the county, which said road runs through their land at and near Kaolin, in said county; and that as the owners of the land on both sides of said road, they own all of the land over which the public travel just at the place occupied by their manager, Mr. F. E. Henderson, and for a good many hundred yards in both directions, east and west, from said place (except at the church), and that they are desirous of using the land over which the said Pine Log Road runs at said place, and wish to obtain the permission of your honorable board to deviate the public road along the line, and in the way, as indicated by the plat of John N. Hankinson, Esq., C. E. & S., which said plat is made a part and parcel of this petition. And these petitioners are willing, and do hereby offer to your honorable board at said deviation of said public road, to make as good a roadbed, and place it in as good condition as the original road now is, so that the public can use it without let or hindrance or inconvenience, all at the expense of petitioners, without costing the county a cent. Wherefore, your petitioners pray your honorable body to take the matter into

consideration and to grant them such relief as in the premises is in accordance with justice and the law in such cases made and provided.'

"This petition was presented to the said board of county commissioners at their regular monthly meeting on April 2d, 1900. The following is taken from the minutes of said board at said meeting in reference to said petition: 'On motion, the rules were suspended to hear a petition of R. McNamee & Co. to change the location of the Pine Log Road, at or near their kaolin mines. After hearing the petition read, and the statement of parties interested, it was agreed that before final action in the matter that the board of county commissioners do meet all parties concerned in said change on Thursday, April 6th, at the place where said change is desired.'

"The record of the next meeting is as follows: 'Aiken, South Carolina, April 13, 1900. The board met in extra meeting at 11 o'clock a. m. Present, T. P. Raborn, chairman, and Commissioner J. C. Courtney. The chairman stated that the meeting was for the purpose of final action on the petition of R. McNamee & Co., to change the location of the Pine Log Road, at or near his kaolin mines. The board of commissioners, after visiting the place where the said change is desired, as set forth in the resolution at the last meeting of this board, granted the following order:

" 'After due consideration of the petition of petitioners herein, and the plat of J. N. Hankinson, Esq., it is ordered, that the prayer of said petitioners be granted, and in accordance therewith, the petitioners be permitted to change the Pine Log Road in the manner indicated upon said plat, and that when the change is completed by the petitioners, and accepted by the county commissioners, then the original road deviated from be abandoned, and the new road be accepted as a part of the Pine Log Road, one of the highways of this county. All expenses of said change to be borne by the petitioners, without cost to the county. It is further ordered, that the petition and the plat accompanying the same

6—60

and this order, be spread upon the minutes of the board of county commissioners, the recording to be paid by petitioners, as a part of the expense. It is further ordered, that after such change has been made, said McNamee & Co. shall, at their cost, keep in repair said changed road- to the extent of the deviation for the period of five years. The changed road shall be thirty feet wide, and have such fills and grades as will make the roadway of easy grade as required by law, and that the county shall be saved from all expense of making such change, and the maintainance for the period above named. It is further ordered, that the said McNamee & Co., before making the change in said road, do enter into a bond to the county of Aiken, in the sum of $1,000, binding them to perform the terms and comply in all respects with the conditions upon which said change is granted. These resolutions were passed after the county commissioners had visited the present roadbed, and they became convinced that the old road is already dangerous, and is gradually becoming more so, and in their judgment, a change in the said road, as above indicated, will be safer, and if made with proper grades, will best serve the interests of the public, and also save the expense of maintaining the same for the period aforesaid, and this is another reason which induced the action of the board in the premises. The changed road, when finished, shall be acceptable to the county commissioners. It is further understood that in laying out and locating said change, the county commissioners reserve the right to make such deviations in its location as they may think best from the plat which accompanies the petition, to be changed or altered, so as to conform to the -direction of the commissioners. T. P. Raborn, county supervisor. Attest: J. C. Courtney. A. W. Sanders, clerk of county commissioners.'

"The bond required in the foregoing resolution was duly executed and delivered. It is not necessary to set that out. The relator submitted that the meeting of the board of county commissioners, held on April 13th, 1900, at which

the resolution last cited was passed, was an extra meeting; that such meeting was without authority of law; and, therefore, the action of the board was illegal. By an act of the General Assembly, approved March 23, 1896, entitled 'An act to amend an act entitled "An act to provide a system of county government for the several counties of this State, so far as it relates to the working and maintaining of the roads and highways in this State," ' 22 Stat. at Large, p. 227, it is provided, *inter alia,* in 'Sec. 1: The township board of commissioners and the county board of commissioners, as hereafter set forth in this chapter, shall have full power and authority to order the laying out and repairing of public roads when necessary, to appoint where bridges or ferries and fords shall be made, to discontinue such roads, bridges and ferries as shall be found useless, and to alter roads so as to make them more useful.' Sec. 31 of said act provides that 'All acts or parts of acts inconsistent with this act be, and are hereby, repealed.' The act of the General Assembly, approved February 19th, 1900, 23 Stat. at Large, p. 286, entitled 'An act to amend sections 3 and 4 of an act entitled "An act to provide a system of county government of the several counties of this State, so far as it relates to the maintaining and working of the roads and highways in this State," approved 23d of March, 1896,' amends section 3 so as to read, *inter alia,* "The county board of commissioners of the several counties of this State are hereby authorized and empowered, in their discretion, to discontinue any public road, bridge or ferry. They may also open new public roads and widen or change the location of old public roads where, in their judgment, such change would be for the material interests of the traveling public.' The position of counsel for relator, that the board could not 'change' the road at an extra meeting, is, as I understand the argument, based upon sec. 2 of an act, entitled 'An act to amend an act entitled "An act to provide for the county government of the various counties of this State," ' approved March 6th, 1899, 23 Stat., p. 113. Said section reads:

'Sec. 2. That said board shall meet at the county seat, at stated times, once in each month, for the transaction of business, and a majority shall constitute a quorum. The county supervisor shall be chairman of said board.' The same act, sec. 3, provides "That said board of commissioners shall, in their several and respective counties, have and exercise all the jurisdiction, powers and duties heretofore devolved by law upon the county supervisor, the county board of commissioners, and the township board of commissioners, under the provision of the laws heretofore existing, providing for a system of county government for the various counties in this State.' Sec. 11 of said act repeals all acts inconsistent with the provisions. Sec. 2 of said act, above set out, is mandatory in its terms to the extent of requiring the board to meet 'once in each month' 'at the county seat' and 'at stated times,' for the transaction of business. This is not only proper, but also necessary, as the board has to dispose of public business, and it is necessary that the public should know the time and place of the meeting of the board. This affords every person who has a right to appear before the board an opportunity to do so. But it does not follow that the board has no legal right to meet in extra session or meeting. The counsel for relator, in argument said, that an extra meeting might be legal under extraordinary circumstances, such as the burning of the court house or jail, or the washing away of bridges by stream, etc. If this be so, then the board has a right to meet in extra meetings and to transact public business, because the right to meet in extra meetings involves a question of power, jurisdiction, and not of expediency. But I do not think that this is an open issue, for in the 21 Stat., p. 481, we find the act referred to in the acts of 1896, 1899 and 1900, *supra,* entitled 'An act to provide a system of county government for the several counties of this State,' which provides in sec. 9, p. 483, * * * 'And the county board of commissioners shall meet thereafter on the first Monday in January, April, July and October of each year at the county court house, for the transaction of business,

and a majority of said board shall constitute a quorum.' *Provided,* that the chairman of said board may call an extra meeting at any time, and shall be required to do so upon the written request of three members of the board.' The second section of the act of 1899, *supra,* amended said sec. 9 of the act of 1893, by requiring monthly instead of quarterly meetings; but it did not repeal the provision for extra meetings, and the authority, power to meet in extra session is, by sec. 3, of the act of 1899, given to the board. The petition of McNamee & Co. was filed at a regular or 'stated' meeting of the board, and was considered and acted upon at the extra meeting. There is, and can be, no doubt as to the authority of the board to accept, for consideration, said petition, at a stated meeting, and, as we have seen, the board had the authority to meet in extra session, and dispose of business. I do not think that the position of relator is tenable. In further support of this conclusion, I cite 'An act to provide a system of county government for the county of Aiken,' approved February 19th, 1898, 22 Stat., p. 862. Sec. 2 provides that each of the commissioners 'shall receive the sum of $3 per day for each day actually in service, not to exceed twenty-five days in each year.' This necessarily implies that the board may meet more than 'once in each month.' Sec. 3 of the act says '* * * the board * * * shall meet at the county seat at least once a month for the transaction of business.' From this it follows that the board may meet more than once a month. This act is not inconsistent with the provisions of the act of 1899, or of 1900, *supra,* and is not repealed. The petition alleges that at said extra meeting only two of the board, to wit: T. P. Raborn, chairman, and J. C. Courtney, commissioner, were present. The other commissioner, A. J. McElmurray, though summoned to attend, was not present, but he concurs in the action of the board. The board consists of three members, 'and a majority shall constitute a quorum.' Sec. 2, act of 1900, Stat. at Large, vol. 23, p. 114. In the absence of such a statute, a majority of the board could act. *Bank* v. *Evans,*

28 S. C., 521.  The leading counsel for the relator charac-
terized the act of 1900, giving such large powers to the board
of commissioners, as pernicious, vicious and unwise.  Argu-
ment along this line might, with propriety, be addressed to
the General Assembly, whose duty it is to make, repeal and
modify laws, but it has, and can have, no force or effect upon
the Court; because it is in the duty of the Court to declare,
not make, the law.    It is not the province of the Court to de-
termine whether a law is wise or unwise.

"The petition alleges that 'the citizens of said neighbor-
hood, who were accustomed to use and travel over said pub-
lic highway, as they had a right and privilege to do, had no
notice of the action of the board until said action was taken
by the board.'  The law does not require that the board
should give 'notice' of its intention to change the route of an
old highway, to citizens who use and travel the old road,
unless such change necessitates the use of a citizen's land, and
then only such citizens are entitled to notice.    Chap. XXX.,
art. 2, vol. 1, of the Rev. Stat. of 1893, entitled 'Right of
way and lands for highways, roads and streets—manner of
obtaining,' viz : secs. 1171, 1172 and 1173, are taken from the
act of 1883, entitled 'An act to authorize county commission-
ers to open and establish public highways,' 18 Stat., p. 631,
and acts amendatory thereof.    Sec. 1171 directs the man-
ner in which boards of county commissioners may open or
change the location of highways, viz : upon the petition of
twenty freeholders, etc.    Sec. 1172 provides that written
notices be posted in the townships through which the road
passes, and twenty days notice be given, and that 'all persons
interested shall be permitted to offer his testimony for or
against the change of location, etc.'    These sections are re-
pealed.    Sec. 642 of Rev. Stat. of 1893, and the act of 1893,
21 Stat., p. 481, sec. 1, is as follows : 'that from and after the
first day of January, 1895, all acts, parts of acts, or sections
of the General Statutes relating to the election, duties,
powers and rights of county commissioners, be, and the same
are hereby, repealed, except such special acts, parts of acts

or sections of the Gen. Stat. as have heretofore conferred special powers and privileges upon the county commissioners of any county, which said duties are devolved upon the county supervisor and county board of road commissioners as hereinafter provided.' It will not be contended that the act of 1883, and the acts amendatory thereof, appearing as secs. 1171 and 1172 of the Rev. Stat., are 'special acts,' or which 'conferred special powers and privileges upon the county commissioners of any county.' They are general provisions, and as such are repealed by the act of 1893. There is nothing in the fact that the act of 1883, and its amendments, appear in the Rev. Stat. of 1893. That work is merely a compilation, and not an act of the General Assembly. *Armstrong* v. *Brant,* 44 S. C., 181, and *Keller* v. *Pagan,* 58 S. C., 260. The legislature must have had in view the provisions of the act of 1883, requiring notices to be given to persons interested, when the location of an old road is to be changed, and intentionally repealed those provisions. The case of *Hill* v. *Laurens County,* 34 S. C., 145, construed the act of 1883, and held that said act must be followed by the commissioners in changing an old road. Previous to the act of 1883, the commissioners had the power, in their discretion, to alter a public road without giving notice. *Commissioners* v. *Murray,* 1 Rich., 336. In view of the legislative and judicial history of this State, upon the subject of changing the location of an old road, and the repealing clause contained in sec. 1 of the act of 1893, we must give full force and effect to the later acts. In the act of 1896, the commissioners are given 'full power and authority' to 'alter roads so as to make them more useful.'—Sec. 1. Again, in sec. 3 it is enacted : 'The county board of commissioners of the several counties of the State are hereby authorized and empowered to change the location of any of the public roads in any of the counties of this State, where in their judgment, steep hills and rough places in said roads can be avoided by so doing, and where such change would be to the material interest of the traveling public.' Nothing

here as to giving notices to persons using the road; but the matter is left to the 'judgment' of the board. The General Assembly, by the act of 1900, *supra,* repealed this provision, and enacted the present law, under which the board of county commissioners 'May * * * widen or change the location of old public roads where, in their judgment, such change would be for the material interests of the traveling public.' Under the law, the relator 'and other citizens of said county and State, who are in similar plight as himself,' were not legally entitled to notice of any change in the location of the Pine Log Road. The law left the matter to the 'discretion' of the board. The only person to whom a notice is required to be given is the owner of land, whose land is to be condemned for a right of way upon which the road is to be located. Under the terms of the act of 1900, sec. 3, the board 'may obtain the right of way by gift.' McNamee & Co. owned all the land upon which the 'change' of the road would pass; they instituted the matter of the change; proposed to 'give' the right of way, and, therefore, the board had full jurisdiction of the subject matter, and of the parties necessary to the determination of the same. Counsel for the relator asks, what is the jurisdiction of the board of county commissioners over highways, and the power of the said board in regard to changing and altering the same? The latter clause of this question is the one we are considering, and to some extent has been discussed. The answer to the query is found in the act of 1900, *supra,* and is, the board may 'widen and change the location of old public roads where, in their judgment, such change would be for the material interests of the traveling public.' The words 'in their judgment,' like the words 'in their discretion,' means that the board must exercise their judgment with judicial discretion, and in a manner that is legal. The 'material interests of the traveling public' is the object to be kept in view, and the 'judgment' of the board must be used to subserve and advance that interest. The board cannot 'change the location of old public roads,' to subserve the private interests of an

individual or individuals. In every 'change' of an old road some individual is apt to be injured, while other individuals may be benefited. Such are, or may be, the necessary results of such changes. If such results follow a 'change' of an old road, 'when such change would be for the material interests of the traveling public,' it is a mere incident, and, as we shall see, does not affect or impair the action of the board.

"In the case of the *State* v. *Commissioners of Roads,* 11 Rich., 487, the Court of Appeals, by Glover, J., say: 'The complaint of the relator is, that the change was made for the accommodation of an individual against the wishes of those interested in the use of the way, and that the change is not slight, but, in effect, the opening of a new road. If no inconvenience results to the public from a mere change which promotes the interest of the freeholder, a continuance of the old line, because it accommodates an individual, would be perverse and unreasonable exercise of power. The deviation in this case is more than one mile, and that, it is agreed, is neither slight nor for a short distance, and we are referred to lexicographers for a definition of the terms employed. We prefer the authority of the case of the *Commissioners of Roads* v. *Murray,* 1 Rich., 335, where the alteration was greater, and the language of the Court is, "The power of the board to make alterations in a road cannot well be doubted. It is not making a new road, it is only the making of such alterations and deviations in a road already existing, as, in their judgment, the public interest may require. This must be done in good faith, and not under the pretense of alteration to make a new road." Changes made in an extended line of road may be inconsiderable, which in one of limited extent would be important. But the expediency and extent of the change must be submitted to the decision of the board of commissioners, in whom the authority is vested to make alterations, and we will not presume that the defendants intended, under the pretense of a change in the road, to evade the law. We rather presume that they complied with what the law required, and decided after a full and impartial

consideration, and the evidence authorized this presumption. It is probable that a majority of the traveling public believe the alterations improper, but we are of the opinion that it is generally safer, in such questions, to rely on the judgment of those tribunals charged with the decision of them, than on democratic majorities.' It is to be noted that the act of 1900 is broader in its terms than the law was when the above case was decided; for the act does not restrict a 'change' to such changes as are 'slight,' nor 'for a short distance.' In the case last cited, the Court says: 'It is necessary that such power should be conferred on those charged with the duty of superintending and keeping in repair the highways of the county. If no deviation be allowed from the original road-bed, serious inconvenience to the people would result from obstacles, injudicious locations, which admit of an easy remedy by short deflections from the main track; on the other hand, such alterations are proper where they are made at the request of the owner over whose land the road runs, provided the public receive no detriment from the change. The public good is paramount, but private interest should not be sacrificed to it without manifest necessity; and so far as one or the other is involved in the highways, no fear of their invasion can be reasonably indulged from the abuse of the guarded powers vested in the commissioners of roads.' As we have seen, the record of the board in the case at bar, shows that the proposed change is for the material interests of the traveling public. No intimation is there given that the change is for the benefit of McNamee & Co.

"The second question of counsel for relator is, 'Has the said board power to grant to an individual the right to change the route of an old public road on his lands, merely for the purpose of enabling such individual to plant or mine the old roadbed for his own advantage and profit?' The answer to this question, as stated, would be no; but the preliminary question is, has this question relevancy in this case? Do the facts warrant it? A highway or public road does not vest the title or fee in the land over which it passes in

the public.   'By the common law, the fee of the soil remains in the original owner, with the use of the road in the public. If vacated by the public, he resumes exclusive possession, of the ground used as a highway, he is entitled to the timber and grass upon the surface, and to all minerals below it.' Anderson's Law Dic., p. 909, citing *Ritchie* v. *Franklin County,* 22 Wall, 75. . 'Right of owner.   He has a right to sell the land subject to the easement.   He may mine under it, carry pipes beneath it, or run a drain under it.   He may also have an action of trespass against any one cutting trees or digging up the soil.'   9 Am. & Eng. of L., p. 375.   'Abandonment.   Upon the abandonment of the public easement the whole property reverts to the owner of the fee.'   *Ib.* 'Adjacent owners.   Where the same person owns lands bounding both sides of a highway he is presumed to own the fee of the roadbed.   Owners on opposite sides own *ad medium filum viae.*   A conveyance bounded by a highway carries with it the fee to the middle of the road.'   *Ib.*   It is unnecessary to cite other authorities.   R. McNamee & Co. own the land on both sides of the old Pine Log Road as now located, and also, where it will be located, if changed as proposed by the board of county commissioners.   McNamee & Co. own the land over which the old road passes, and own, also, all of the kaolin beneath the surface of the old road.   If the road is abandoned, the right to the possession and use of the land, including the right to dig and mine kaolin, belongs to McNamee & Co., because the law is to that effect.   The action of the board cannot, under those circumstances, be construed as conveying the fee in the roadbed, or the right to dig and mine kaolin in the abandoned roadbed to McNamee & Co., for, as we have seen, neither the board of county commissioners nor the public ever owned the fee in said roadbed, or the kaolin beneath its surface. · If the board of county commissioners should attempt to have the kaolin beneath the surface of said old roadbed dug and mined, McNamee & Co. could maintain an action against said board for such acts, and have the board enjoined from digging

or mining said kaolin.    When McNamee & Co. presented
their petition in this matter to the board of county commis-
sioners they stated, openly and frankly, that they 'are de-
sirous of using the land over which said Pine Log Road runs
at said place.'    That is what they desired, and what they
are attempting to get, and as an inducement, they offer to
construct a new road upon their lands.    No matter what
may be the purpose of McNamee & Co., the question is, what
has the board done?    No one supposes that McNamee &
Co., or the average citizen, will voluntarily give a right of
way over his land, and construct a road, simply to advance
the material interests of the traveling public.    That is not
ordinary human nature.    But are not McNamee & Co. doing
what citizens have done in the past, and will continue to do
in the future, viz: give the right of way and construct a
road, for the purpose of having an old one changed?    That
is the cause, or may be the cause, of many changes in the
location of an old road which advances the material interests
of the traveling public.    It is the duty of the board of com-
missioners to make such changes when the change does ad-
vance the material interests of the traveling public.    Sup-
pose that the board had had under consideration the change
proposed herein, but were deterred from so doing because of
the expense of condemning and paying for the new right of
way, and the construction of the road, could they be censured
for accepting McNamee & Co.'s offer, and changing the
road, if by so doing the material interests of the traveling
public were advanced?    The question answers itself.    The
act of legislature provides for gifts of rights of way, and I
can see no reason why a right of way, with a road con-
structed upon it, should not be accepted as a gift of the
board.

"I am still considering this case upon the record herein;
that is, the minutes of the board.    In considering that record,
certainly in so far as the board is concerned, it would be
manifestly unjust and improper to consider the record dis-
jointedly; but we should consider that record as an entirety,

ascertain therefrom, according to its terms, construed as an entire record, what the board has done, and propose to do. The board of county commissioners are public officials vested with judicial powers, resting in their judgment. The presumption of law is, that the board has acted legally, had heard the petition herein, and acted thereon as provided by law, and that their minutes are true. We turn to said minutes, and after reading their action in the premises, we find in their order, made on April 13th, the day of the extra meeting, and during said meeting, these words: "These resolutions were passed after the county commissioners had visited the present roadbed, and they became convinced that the old road is already dangerous, and is gradually becoming more so, and in their judgment, a change in the said road as above indicated, will be safer, and if made with proper grades, will best serve the interest of the public, and also save the expense of maintaining the same for the period aforesaid. And this is another reason which induced the action of this board in the premises.' This other 'reason' just cited evidently refers to the clause, 'and also save the expense of maintaining the same for the period aforesaid,' which, by reading the entire order, heretofore set out, is easily understood. Said order makes ample provisions requiring the changed road to be 'made with proper grades.' It is clear from the terms of the record, that the board had jurisdiction of the subject matter, also of the persons legally interested, and that the change in the location of the old Pine Log Road is to be made, 'in their judgment' for 'the material interests of the traveling public.' This action was taken after much consideration, involving not only the examination of witnesses, but also personal inspection and examination by the board of the location of the old and changed roads.

"I hardly consider it necessary after what has been said, to consider the allegations of the petition, alleging that the action of the board is a fraud upon the vested rights of the relator and other citizens of said vicinity 'in like plight with

himself,' or that the board is 'conniving and confederating' with McNamee & Co. to discontinue the old road, to the end that McNamee & Co. 'may mine the land now covered by the said public highway for their own individual profit and benefit.' I have discussed these matters. Nor do I think that the position that it is the duty of the board to change the location of the old road, and that the allowing of McNamee & Co. to construct the proposed changed road is illegal, can be sustained. The road, as it is stipulated that it shall be, has not been completed, nor has it been accepted by the board. The change is being made by McNamee & Co. on their own land, and at their own expense, and said change has not been accepted. There is nothing illegal in this. I know of no law which prohibits the board from permitting a citizen to repair in a proper manner, at their own expense, an old highway. The law allows the board to open and repair, etc., roads in various ways, and the action of the board in this case is within the power conferred upon said board.

"Passing now from the record, as contained in the minutes of the board, and considering the verified allegations of the petition herein, and the allegations of the verified return of the board to the rule to show cause, also the numerous affidavits submitted by the relator and the board, I can see no reason why the petition should not be dismissed. As to the railroad of McNamee & Co. The board of county commissioners do not charter railroads, nor can the board order them to be built, or not to be built, in certain places. The board cannot prevent the crossing of a public highway by a railroad, either in one place or a number of places. A great many highways cross and recross railroads. The board can require a railroad to maintain safe crossings when a highway crosses its track, and to require other acts, for the safety and convenience of the traveling public; and it would be assuming great power by this Court to hold that the board could not change the road in question because the road, as changed, would cross the roadbed of a railroad twice, instead of once,

as the old road stands. This is a matter to be disposed of under the law, by the board 'in their judgment.'

"Returning now to the allegations of fraud, confederating, combining, etc., as above stated. As I understand the pleadings, and the arguments of the counsel, neither the board nor the members thereof are charged with actual fraud. There is no suggestion of corruption in the sense that the board is guilty of turpitude or of corruption. The fraud, as charged, is legal fraud, and consists in the charge that the board's action was to favor McNamee & Co., and not for the material interest of the traveling public. We will first take up the return of the board which counsel for the relator argued, admitted all the material allegations of the relator's petition, save the allegation as to fraud upon the public, and as to collusion with McNamee & Co., and that with these exceptions the return is simply a confession and avoidance. Stress is laid upon the allegation of the board as found in the third paragraph of its return, to the effect 'that the material interest of the traveling public would not be detrimented or injured by the said change.' It is argued that such change, to be legal, must be for the material interest of the traveling public, and that a change which is simply not detrimental or injurious to the public is not legal, and, therefore, the change is for the individual benefit of McNamee & Co. The return is, to a great extent, an answer to the allegations of the petition, and as the said petition, in various paragraphs, especially the 9th, charges that the destruction of the old road will injure, damage and prejudice the relator and other citizens, we must construe said allegation in the return as a denial of said charges in the petition. That this is the meaning of the return, is evident by the return itself, read as an entirety; and especially when the entire clause is read, as follows : 'the material interest of the traveling public would not be detrimented or injured, but rather aided and improved by the changes, etc.' Counsel also lay stress upon the allegation in the return, that 'the board determined not to finally act upon the petition that day, but to visit the road in

question, and to inspect the proposed change of road and to look into the entire matter, taking in view the claims of R. McNamee & Co., and also of the public and all citizens.' 'Taking into view the claims of R. McNamee & Co.' is regarded as a confession. I do not think so, especially when read in connection with the last section of paragraph three of the return, and what the Court of Appeals said in State *v.* Commissioners, already cited, as to the 'interests' of individuals.

"A number of affidavits have been submitted by the relator tending to show that the proposed change in the road is not for the material interest of the traveling public, and the board has submitted a number of counter-affidavits that it is. The parties making these affidavits are men of the highest character, those on the side of the relator as also those on the side of the board. That is the very question which the board, 'in their judgment,' is to determine, and I shall follow the law as settled by the Court of Appeals in the case of the *State* v. *Commissioners,* 1 Rich., 488, stated in these words: 'It is probable that a majority of the traveling public believe the alteration improper, but we are of opinion that it is generally safer, in such questions, to rely on the judgment of those tribunals charged with the decision of them, than on democratic majorities.'

"The other issues raised are either disposed of in what has been said or fall within the principle discussed. The burden of proof was upon the relator, and the board has denied every material allegation in the petition.

"The relator has not applied to the board of county commissioners for the relief he contends for here. 'The writ of prohibition may be defined as an extraordinary judicial writ, issues out of a Court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested. It is an original remedial writ, and is the remedy afforded by the common law against the encroachments of jurisdiction by inferior courts, and is used to keep

such courts within the limits and bounds prescribed for them by law.' High on Ex. Rem., sec. 762. 'Being an extraordinary remedy, however, it issues only in cases of extreme necessity, and before it can be granted it must appear that the party aggrieved applied in vain to the inferior tribunal for relief.' High on Ex. Rem., sec. 765. The writ of prohibition cannot act as an appeal, which proceeds upon the ground of error in the exercise of a jurisdiction which is conceded. *Ib., sec. 772.* 'It must be remembered that the object of this writ is to restrain the respondents within their appropriate jurisdiction. Of course, this can be done only when respondents are outside their jurisdiction. This writ has no application to any error of law or fact committed within their jurisdiction by this county board of control. We can well see that errors both of law and fact may be committed by such a board when acting upon matters within its jurisdiction, just as frequently happens in other inferior tribunals. But the writ of prohibition does not lie in such a case. In just such cases the writ of *certiorari* is applicable.' *Gibbs* v. *Kirkland,* 41 S. C., 36. If the inferior court has jurisdiction, and is acting within, and under, its jurisdiction, the writ of prohibition will not lie to correct error of law or of fact. High on Ex. Rem., sec. 762 to 772; *State* v. *Ry. Co.,* 1 S. C., 54; *Gibbs* v. *Kirkland,* 41 S. C., 35.

"Without citing further authority, or prolonging this decree, my conclusions are:

"1st—That the board of county commissioners have jurisdiction over the subject matter herein.

"2d—That said board had jurisdiction of all parties necessary to a determination of the issues herein.

"3d—That the question as to whether or not the change in the location of the Pine Log Road is for the material interest of the traveling public, is for said board to determine, and that errors committed by said board, if any have been committed, cannot be corrected by the writ of prohibition.

"4th—That said board is not guilty of any fraud, collusion, combination or confederation with R. McNamee & Co.

7—60 .

"5th—That R. McNamee & 'Co. are entitled to their discharge from the rule to show cause herein.

"Wherefore, it is ordered and adjudged, that the rule to show cause, issued by me on June 9th, 1900, and the order made by me on June 16th, 1900, be, and hereby are, discharged.

"That the petition of the relator herein be, and hereby is, dismissed.

"That the restraining order herein granted be, and hereby is, rescinded and discharged."

From this decree petitioner appeals.

*Messrs. Izlar Bros., W. T. Gary* and *R. J. Southall,* for appellant. The former cite : *What is the jurisdiction, duties and powers of county commissioners?* 21 Stat., 481 ; 22 Stat., 227 ; 22 Stat., 862 ; 23 Stat., 1, 286 ; Rev. Stat., 1167. *Has county commissioners power to grant to an individual the right to change an established highway on his lands for his own benefit?* 9 Ency., 2d ed., 473. *Prohibition will lie to protect interest of public when commissioners have exceeded their jurisdiction:* Harp., 381 ; 1 Spear., 329, 268 ; 20 N. Y., 531 ; 41 S. C., 35 ; 79 N. Y., 592. *There is now no appeal from such act of commissioners, and relator is without a remedy:* Con., art. IV., sec. 9 ; Con. 1895 ; Code, 358 ; 32 S. C., 1 ; 1 Bail., 209 ; 3 Strob., 573 ; 4 Rich., 291 ; 14 Rich., 7. *Injunction will not lie:* 5 R. I., 472 ; 4 Am. R., 598. *Nor will certiorari:* 4 Ency. P. & P., 83, 100. *As to office of writ of prohibition:* 3 Rich., 113 ; 2 N. & McC., 419, 410 ; 1 N. & McC., 501 ; 4 Rich., 513 ; 1 S. C., 261 ; 2 Bail., 225 ; 2 N. & McC., 174 ; 1 Bay, 273 ; Dud., 101 ; 2 Spear, 761 ; 3 Hill, 314 ; 2 McC., 400 ; Harp., 336 ; 1 Mill., 55 ; 14 S. C., 427 ; 3 Brev., 268.

*Messrs. G. W. Croft & Son,* for commissioners, and *Messrs. Henderson,* for McNamee & Co. The latter cite : *As to jurisdiction of commissioners:* 40 S. C., 283 ; 16 S. C., 247 ; 22 Stat., 228 ; 23 Stat., 286 ; 21 Stat., 481 ; Rev. Stat.,

1171, *et seq.;* Rev. Stat., 642, *et seq. As to repealing clause:* 57 S. C., 166. *If commissioners have erroneously decided the facts, it cannot be corrected in this way:* 19 Ency., 1st ed., 271; 1 McC., 505; 4 Rich., 515; 41 S. C., 36. *Commissioners may make such change if public is benefitted, although some one individual may be thereby specially benefitted:* 15 Ency., 2d ed., 355; 5 Grat., 265; 11 Rich., 481; 4 McC., 4. *Notice to public is not required when mere alterations or changes are contemplated:* 1 Rich., 336; 23 Stat., 286; 15 Ency., 2d ed., 393.

April 1, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is a proceeding in prohibition to restrain respondents from changing the public highway at or near Kaolin, in the county of Aiken, from discontinuing the use of the old road at said point, from mining the said highway at said point, or otherwise obstructing the old highway. The cause was heard by Judge James Aldrich upon a return to a rule to show cause and affidavits pro and con, who in an elaborate opinion, herewith reported, dismissed the application.

We will discuss the grounds of appeal in a general way and briefly. Prohibition is proper only when the inferior tribunal acts without jurisdiction or in excess of its powers, and will not lie to correct irregularities, or errors of law or fact. *State* v. *Wakely,* 2 Nott & McCord, 411; *State* v. *Road Commissioners,* 3 Hill, 314; *State* v. *Kirkland,* 41 S. C., 36.

By the act of 1896, 22 Stat., 227, amending the county government act of 1893, 21 Stat., 481, and by the act of 1900, 23 Stat., 286, amending sections 3 and 4 of said act of 1896, it is clear that the respondents as county commissioners of Aiken County had power to "alter roads so as to make them more useful" and to "change the location of old public roads where in their judgment such change would be for the material interests of the trav-

eling public." It is contended, however, that such jurisdiction cannot be exercised at an extra meeting of the board, as in this case attempted. This contention is correctly disposed of by the Circuit Judge, who shows that sec. 9 of the county government act of 1893, 21 Stat., 483, authorizes extra meetings of the board on the call of the chairman or at the written request of three members of the board, and that this provision is not inconsistent with, and, therefore, not repealed by sec. 2 of the act of 1899, 23 Stat., 114, requiring that the board shall meet monthly, instead of quarterly, as provided in the act of 1893. The requirement to meet once in each month is in effect a requirement to meet not less than once a month, but is not a prohibition to meet oftener. Should the business of the county require an extra meeting, it is competent for the board, or a quorum thereof, to hold such meeting. We agree also with the Circuit Court that the jurisdiction of the board to act in the premises was not affected by any failure to give the public notice of the intended change of location, for the reason stated that the act of 1883, appearing in the Revised Statutes as sec. 1171, *et seq.* (which prescribes a method of procedure in laying out or changing the location of public highways, which procedure includes the posting of written notice in two public places within the several townships through which such highway shall pass, designating the time and place for considering the expediency of altering or changing the location of such highway at least twenty days before the day appointed for such meeting, &c.), is repealed by the act of 1893, *supra,* which does not prescribe any such notice, and only requires notice to be given to the persons owning the land where such alteration is to be made. Even if the act of 1883, *supra,* is not repealed in this regard by the act of 1893, *supra,* we do not think the act of 1883 applicable to this case, where the change of road is a mere deviation of the line of the old road at one point and wholly upon the land of the respondents, McNamee & Co. The change did not involve the laying out of a new road, nor

was the change so substantial and material as to be in effect the relocation of a highway. . The act of 1883 contemplated the opening of a new road or such extensive changes in an old road as to practically amount to a new road. It would be unreasonable to suppose that the legislature contemplated the cumbersome and delaying machinery provided in the act of 1883, in cases where it was deemed desirable to make slight alterations in a highway, in avoiding obstacles, in providing for a better grade, or improving the safety of the road. In the case of *Commissioners* v. *Murray,* 1 Rich., 335, construing the act of 1825, which prohibited the opening of a new road without three months previous notice by advertisement in the settlement through which the intended road is to be opened, the Court held that the commissioners had power without giving notice to make alterations or deviations in a road which did not practically constitute the opening of a new road, and that the requirement as to notice did not apply.

It cannot be doubted that the statutes invest the board of county commissioners with power and discretion to make alterations in highways. Conceding this, appellant contends that the commissioners in this instance went beyond their powers and abused their discretion in making the alteration complained of, not for the material interests of the traveling public, but in the private interest of McNamee & Co. It may be stated here that McNamee & Co. were the owners in fee of the land occupied by the old road near their kaolin mine, and desired to mine for kaolin in the land covered by the road. To sustain the appellant's last contention would require us to find, as matter of fact, that the board was wholly influenced in the private interest of McNamee & Co. and was disregardful of the interest of the traveling public. Such a conclusion would conflict with the records in office of the commissioners. In the resolutions authorizing the change in the road, it appears that the resolutions were passed after personal inspection of the premises, and because the commissioners were convinced

that the old road is already dangerous and gradually becoming more so, and that the proposed change would be safer, and if made with proper grades will best serve the interests of the public. The commissioners were careful to cause McNamee & Co. to give bond for the proper grading and filling of the new road, and for its maintainance without expense to the county for five years. The fact that the petition by McNamee & Co. showed that McNamee & Co. desired the change in their own interest, has no weight in determining what motive influenced the commissioners. Whether the commissioners abused their discretion and were influenced by improper motives, was a matter which it was incumbent upon the relator to show, with the presumption in favor of proper official conduct. Many affidavits were submitted to the Circut Judge on this application, those in behalf of the relators tending to show that the proposed change was not in the interest of the traveling public, and those in behalf of the respondents tending to show that the change was beneficial to the public. It is not necessary for us nor was it necessary for the Circut Judge to decide this particular issue. It is sufficient to say that if all these affidavits had been originally submitted to the commissioners and they had decided to change the road, because in their judgment it was to the material interest of the traveling public, such decision could not be reviewed and annulled by means of writ of prohibition.

The judgment of the Circuit Court is affirmed.